**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **No.  1:21-00411-AMP-2** |
| | ) | **JUDGE AMIT P. MEHTA** |
| | ) | **DRAFT** |
| **MATTHEW BAGGOTT** | ) | |

**<u>SENTENCING MEMORANDUM</u>**

Comes now Mr. Baggott, through counsel, and requests that this Honorable Court

sentence him to a thirty-six-month term of probation and sixty hours of community service. Mr.

Baggott has reviewed the PSR with counsel and has no objections. Furthermore, he has reviewed

the Sentencing Recommendation and agrees with the recommendation for term of three years of

probation.

**I.    IMPORTANT SENTENCING FACTORS**

In imposing a sentence, the court must consider the factors set forth in § 3553(a)(1)-(7).

These additional factors include but are not limited to; the nature and circumstances of the offense,

the history and characteristics of the offender, the need to protect the public, promote respect for

the law, and the need to avoid unwarranted sentencing disparities. *See* 18 U.S.C. § 3553(a).

**A.    The Nature of The Offense**

Mr. Baggott acknowledges the seriousness of the event and now understands how his

individual actions contributed to the larger threat to safety, order, and democracy. He is

remorseful for his actions and determined to never repeat similar activity. An individualized

assessment of his actions reveals several key factors in favor of probation. First and foremost,

Mr. Baggott had no pre-planned agenda to overthrow the U.S. Government nor prevent the

election process. He possessed no weapons, tactical gear, maps, or any other items needed to

overthrow the Government.  In fact, Mr. Baggott had no plan or intention of even breaching the Capitol when he left Tennessee.  Lastly, he is not a part of any group, association, or organization that traveled to the Capitol with plans of siege, treason, and violence.

Mr. Baggott's entrance into the Capitol and actions while inside are also mitigating factors in favor of probation.  For example, Mr. Baggott was not involved in the initial violent breach into the Capitol. To be clear, Mr. Baggott knew that he did not have permission to enter the Capitol, and clearly observed others enter through busted windows. He simply points out that he played no leadership role into the breach and did not destroy property to gain entrance. Furthermore, Mr. Baggott did not enter private offices, nor either chamber in which Congress convened. He further notes that while inside he did not commit any acts of theft, vandalism, or destruction.

Mr. Baggott's biggest regret is allowing himself to be emotionally moved by the energy of the crowd and acting outside of his character. He was raised by missionary parents who taught him faith, compassion, and respect for the law. He regrets deviating from those principles on that eventful day. Prior to entering the Capitol, he admits that his frustration was magnified by the crowd's momentum. In the heat of the moment Mr. Baggott threw an empty water bottle in the direction of law enforcement. He points out that he did not intend and did not hit any persons. However, he is ashamed of throwing the bottle at all and apologizes for his actions that contributed to the emotional stress and fear of danger experienced by Capitol Police. Mr. Baggott is also disappointed in himself for having physical contact with law enforcement. He admits that while leaving the building, he briefly touched an officer's baton while the officer was legally dispersing the crowd.

B.      **History and Characteristics**

Mr. Baggott was born in Bouake, Cote d'Ivoire to U.S. missionaries. (PSR at ¶51, 53.)
Living in the second most populous city in the Ivory Coast provided Mr. Baggott access to both
African and French schools where he received a well-rounded education including learning to
speak French. Mr. Baggott has fond memories playing with neighbors and chasing lizards in and
around the multi-family compound. On the other hand, Mr. Baggott experienced several
traumatic events in Bouake. For example, his family were victims of armed home invasions on
two occasions. (PSR at ¶53.) Mr. Baggott's family was also forced to flee their home due to a
civil war when he was only ten years old. (PSR at ¶54.) According to Mr. Baggott, the good
outweighed the bad and he never lost hope in a better world, and never lost his faith.

Mr. Baggott moved to the United States in 2003 and experienced culture shock when his
family first moved to Tennessee. He describes a difficult transition and recognizes that he was
blessed to have good, supportive family. Mr. Baggott attended Ezell-Harding Christian High
School where he continued to grow in education and faith. After graduating in 2011, Mr. Baggott
attended Faulkner University. However, in 2013 he transferred to Murray State University to
pursue his passion for wildlife and graduated with his Bachelor of Science degree in Wildlife and
Conservation Biology. (PSR at ¶65)

Mr. Baggott is proud to be a small business owner who services the Middle Tennessee
Community. Combining his degree, passion, and experience, Mr. Baggott formed Critter Gitter
Animal Removal, LLC in 2018 where he is the sole owner and operator. (PSR at ¶69) Critter
Gitter serves the community by trapping nuisance wildlife in residential and business
communities. He earned a Wildlife Nuisance Trapping license, which permits him to "control the
following species: armadillo, beaver, bobcat, coyote, fox, groundhog, mink, mole, muskrat,

opossum, rodents, river otter, rabbit, racoon, reptile, skunk, squirrel, vole, and weasel." (PSR at ¶67)

Mr. Baggott's actions on January 6, 2021, were completely out of his character. He has no prior criminal activity and the people who know him best describe him as caring and compassionate. Words used by Mr. Baggott's family to describe him include "good moral character and integrity," "compassion," "friendly," and "hardworking." These characteristics of Mr. Baggot shine through his families' stories about him, such as when he learned his mother was suffering from cancer and "abandoned his personal plans at his own initiative" to care for his mother, and the close contact he keeps with his 90-year-old grandmother.

Dedication to helping others, positive personal growth, and respect are common themes among the descriptions of Mr. Baggott by longtime friends and associates. For example, Erik Warden, who has shared fifteen years of friendship with Mr. Baggott, described him as a man with "a heart to care for others" and "who would give the shirt off of his back to a person in need." (Attachment 1.) As someone who has known Mr. Baggott before and after this incident, Mr. Warden describes Mr. Baggott as having "grown stronger in his community and his faith," since January 6, 2021, and "has proven there were learning experiences he has taken away" and "is committed not to repeat the same mistakes in the future." (*Id.*) Another longtime friend, Zenon Garcia, has also noticed positive growth for Mr. Baggott throughout their friendship, noting that he has "become quicker to listen, consider and understand." (Attachment 2.) Another friend, Margie Bannister, describes Mr. Baggott as "extremely honorable and respectful," (Attachment 3) and Jerry Nash, his employer and Spiritual leader, sees Mr. Baggott as a "young man of good character with a top-notch work ethic and willingness to serve others … who has

learned from his mistakes and will not repeat them in the future." (Attachment 4.) These are just a sample of the support that Mr. Baggott has in this case.[1]

      **C.      Promoting Respect for the Law**

      In this case, a sentence of thirty-six months of probation promotes respect for the law in several meaningful ways. For one, it acknowledges that Mr. Baggott, who is twenty-nine years old, has led a crime free life up until this incident. Mr. Baggott also demonstrated respect for the law by accepting responsibility via his timely plea agreement with the Government. Mr. Baggott was indicted on June 21, 2021 and entered a plea less than ten months later on April 5, 2022.

      When a person's circumstances or the nature of his offense warrant leniency, a sentence of probation can promote greater respect for the law than would be achieved by a prison sentence. As the Supreme Court explained in *Gall*, "a sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." *See Gall v. United States*, 552 U.S. 38, 48, 54 (2007) (quoting district court opinion with approval). The district court in *Gall* did "tak[e] into account the real conduct and circumstances" of the defendant and varied from an advisory guideline range of 30 to 37 months imprisonment to a sentence of 36 months' probation. *Id. at* 593.  In upholding the probation sentence, the Supreme Court explained that the district court had reached a "reasoned and reasonable decision that the § 3553(a) factors, on the whole, justified the sentence [of probation]." *Id. at* 602.  Mr. Baggott encourages the Court to reach the same conclusion and order a sentence of probation in his case.

---

[1] Mr. Baggott is filing additional letters of support as seen in Attachments 5-9.

### D.       Public Safety and Deterrence

A sentence of probation is appropriate to satisfy both public safety and deterrence. As a first offender with zero criminal history points, Mr. Baggott poses a very low risk of recidivism. Prior to his arrest in the instant case, Mr. Baggott had never been convicted of a felony nor misdemeanor. A person with zero criminal history points is even less likely to reoffend than a defendant with limited criminal history points who also falls within Criminal History Category I. (*See* U.S. Sentencing Commission, Recidivism and the "First Offender," at 13-14 (May 2004).[2] More specifically, the Commission's research has demonstrated that offenders with zero criminal history points have a recidivism rate of just 11.7%, while offenders with just one criminal history point have double the recidivism rate at 22.6%. *Id.* Several courts have acknowledged the reduced recidivism of first-time offenders by granting a downward variance. (*See, e.g., United States v. Cabrera*, 567 F. Supp. 2d 271, 279 (D. Mass. 2008) (granting variance because defendants, like Cabrera, "with zero criminal history points are less likely to recidivate than all other offenders"); *United States v. Ward*, 814 F.Supp. 23, 24 (E.D. Va.1993) (granting departure based on defendant's age as first-time offender since guidelines do not "account for the length of time a particular defendant refrains from criminal conduct before committing his first – i.e., the charged – act)

Mr. Baggott asks that the Court take his first-offender status into account in fashioning an appropriate sentence. He is a 29-year-old man with no prior convictions. His first-offender status signals a low risk of recidivism and should inform the Court's consideration of the need for the sentence imposed to "promote respect for the law" and "protect the public from further crimes of the defendant." See 18 U.S.C. § 3553(a)(2)(A)-(C).

---

[2] https://www.ussc.gov/sites/default/files/pdf/research-and-publications/researchpublications/2004/200405_Recidivism_First_Offender.pdf

Additionally, the Court can review Mr. Baggott's conduct while on pretrial release to gauge whether he has been deterred from further criminal activity.  In Mr. Baggott's case, he has complied with every single condition of pretrial release ordered by the Courts since June 1, 2021. (PSR at  ¶12, 13, 14) Mr. Baggott did not brag about his actions, nor did he attempt to justify them to the community. Instead, he recognized his errors and focused on moving forward in a positive manner. Furthermore, Mr. Baggott did not attempt to promote or glamorize his activity on any form of social media. A sentence of 36 months of probation recognizes Mr. Baggott's status as a first offender, his low risk of recidivism, and post-offense conduct while imposing consequences such as restrictions and oversight by U.S. Probation.

Probation substantially restricts a person's liberty and thus constitutes a serious and meaningful consequence to criminal conduct. *See Gall v. United States*, 552 U.S. 38, 48 (2007). "Probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court. They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony[,] refrain from excessive drinking" and comply with other special conditions like drug testing or participation in drug treatment. *Id*. (citing U.S.S.G. § 5B1.3). Three years of probation is sufficient to deter Mr. Baggott from future crimes while signaling to the public that such actions can result in serious restrictions on one's liberty.

## IV. Conclusion

For all the foregoing reasons, Mr. Baggott respectfully requests that the Court impose a sentence of 36 months of probation combined with 60 hours of community service , which is sufficient to address the sentencing factors expressed in 18 U.S.C 3553(a).

Respectfully submitted,

s/ *Dumaka Shabazz*
DUMAKA SHABAZZ (BPR#022278)
Assistant Federal Public Defender
810 Broadway, Suite 200
Nashville, Tennessee 37203
615-736-5047

Attorney for Matthew Baggott

## CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2022, I electronically filed the foregoing *Sentencing Memorandum* with the U.S. District Court Clerk by using the CM/ECF system, which will send a Notice of Electronic Filing to the following: Benet Kearney, Assistant United States Attorney, One Saint Andrew's Plaza, New York, NY 10007.

s/ *Dumaka Shabazz*
DUMAKA SHABAZZ